## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **SEAN ERROL QUINN,** individually and on Behalf of all others similarly situated | Case No. |
|     Plaintiff, | |
|     v. | Jury Trial Demanded |
| **THE VANGUARD GROUP, INC.,** | |
|     Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Sean Errol Quinn ("Plaintiff") on behalf of himself and all others similarly situated brings this Class Action Complaint against Defendant Vanguard Group, Inc. ("Defendant" or "Vanguard") based on personal knowledge as to allegations regarding himself and on information and belief as to others, and alleges the following:

### NATURE OF THE ACTION

1.  Plaintiff brings this action on behalf of himself and a proposed class of similarly situated consumers against Vanguard arising from its unlawful, fraudulent, and unfair assessment of a $100 Account Closure and Full Transfer Out" fee ("ACFTO Fee") on brokerage accounts when accountholders choose to close their accounts at Vanguard and transfer their funds out to another investment firm.

2.  For years, Vanguard lured consumers into a brokerage contract with the promise of low fees, causing consumers to choose Vanguard over a myriad of other financial investment companies. If consumers no longer wished to use Vanguard, they could close their account, free or charge.

3.     In July 2024, however, Vanguard unilaterally modified its account agreement with its customers to impose a new, mandatory $100 fee for those customers who wished to close their account at Vanguard. The fee applies to all accounts with less than $5 million in assets.

4.     Vanguard describes its newly implemented ACFTO Fee as a "processing fee;" in actuality, however, the fee is not at all tethered to the cost of "processing" account closures— indeed, there is virtually no cost to Vanguard in "processing" an account closure. Instead, the fee is a classic "junk fee" designed to penalize all the but the highest-earning customers who wish to close their account at Vanguard.

5.     As such, the purpose of Vanguard's ACFTO Fee is two-fold: it is designed to recoup extra profit and an unenforceable penalty devised to compel average consumers to stay locked into the contract, or otherwise to punish them if they decide to leave and take their money with them.

6.     Vanguard's addition of the new ACFTO Fee was deceptive, unfair, and in bad faith. Indeed, customers like Plaintiff had no way to anticipate the new ACFTO Fee at the time they opened their account at Vanguard and had no reasonable way to avoid the fee once it had been added.

7.     Moreover, the fee is an unlawful penalty under New York state law, which is the law Vanguard chose to govern its brokerage accounts.

8.     Plaintiff and Class members have been injured by Vanguard's unlawful and fraudulent practices, and allege claims for breach of the implied covenant of good faith and fair dealing, violation of state consumer protection laws, and unjust enrichment. Plaintiff brings this action on behalf of himself and the putative Class and seeks damages, restitution and disgorgement, and declaratory and injunctive relief.

2

**PARTIES**

9.    Plaintiff Sean Errol Quinn is a citizen and resident of Port Ludlow, Washington, and is a former Vanguard brokerage-account holder.

10.    Defendant The Vanguard Group, Inc. is a Pennsylvania corporation with its headquarters in Malvern, Pennsylvania. Vanguard is one of the world's largest financial investment firms and holds over $9.1 trillion assets under management as of August 2024.

**JURISDICTION AND VENUE**

11.    This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Pennsylvania, including Plaintiff Quinn; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction here and regularly conducts business in this District.

**GOVERNING LAW**

13.    Unless otherwise alleged herein, Plaintiffs' common law claims are governed by the laws of the State of New York in accordance with Vanguard's Governing Law provision set forth in its Brokerage Account Agreement.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

A.    **Vanguard Harms Consumers by Luring Them into a Contract with the Promise of Being a Low-Cost Investment Firm with Minimal Fees and Then Later Piles on New, Unexpected Fees to Get Out of the Contract**

3

14.    Vanguard is one of the world's largest financial investment firms. Vanguard distinguishes itself from other mutual fund firms by its unique structure—it is owned by its own investment fund clients and *not* outside shareholders.[1] Vanguard advertises the value of client-based ownership as one that allows the firm to "focus on the long term rather than quarterly results," to keep investment costs low by "consistently pass[ing] along economies of scale," and to "act with conviction on the investment themes that are important to our owners—people like you who invest in our funds."[2]

15.    Vanguard has historically been lauded as the low-cost investing pioneer in the industry.[3] Many in the financial investment space agree that Vanguard is the best low-cost investment option for consumers looking to attain financial independence at minimal expense.[4]

16.    Indeed, Vanguard touts itself as "a leader in low-cost investing" and declares its pursuit to keep costs low to be a fundamental principle in improving customers' likelihood of experiencing financial success: "[m]aking money from investments isn't about predicting the future because the future is unpredictable. Instead, you should focus on the one thing you can control – costs" and "[b]y keeping costs low, you keep more of your returns."[5]

---

[1]    Vanguard, *At Vanguard you're more than just an investor, you're an owner,* available at https://investor.vanguard.com/corporate-portal?cmpgn=BR:PS:XX:BR:20230404:GG:CROSS:LB~Brand_VN~GG_KC~BD_PR~EVGR N_UN~Keyword_MT~Exact_AT~None_EX~None:NONE:NONE:NONE:KW:NavAlone&gad _source=1&gclid=EAIaIQobChMItI6TktTKiQMVgSRECB1UGAw9EAAYASAAEgLLSvD_B wE&gclsrc=aw.ds (last accessed November 7, 2024).

[2]    *Id.*

[3]    Market Watch, *Vanguard, the low-cost investing pioneer, will now charge $100 to close an account—unless you're a multimillionaire,* Vanessa Wong, last updated June 18, 2024, available at https://www.marketwatch.com/story/vanguard-the-low-cost-investing-pioneer-will-now-charge-100-to-close-an-account-unless-youre-a-multimillionaire-09ef461c (last accessed November 6, 2024).

[4]    *See e.g.,* Choose FI, *Vanguard Review 2024: Low-Cost Investing on The Path to FI,* available at https://choosefi.com/review/vanguard-review (last accessed November 7, 2024).

[5]    Vanguard, *About Us – Investing at Vanguard,* available at https://investor.vanguard.com/about-us/investing-at-vanguard (last accessed November 7, 2024).

4

17.     Vanguard prominently declares its mission is "[t]o take a stand for all investors, to treat them fairly, and to give them the best chance for investment success."[6] As such, Vanguard advertises and markets its investment services to individuals with promises of low costs and fees: "Vanguard's low-cost approach can help you make the most your money. You won't pay a commission to buy or sell Vanguard mutual funds and ETFs online."[7]

18.     In a competitive marketplace where there are numerous investment opportunities, Vanguard's low-cost, customer-friendly practices and policies entice average consumers to invest with Vanguard to build wealth at the most affordable option—*without* being nickeled and dimed by unscrupulous fees.

19.     Despite these long-held promises, however, Vanguard recently began deviating from its stated mission through the imposition of anti-consumer fees that have the effect of targeting average, low-to-middle class consumers in favor of the wealthy.

20.     On July 1 2024, Vanguard amended their Brokerage Account Agreement to add a host of new fees to be charged to its brokerage account holders, including but not limited to, a $25 fee for broker-assisted trades of Vanguard funds (unless the customer holds $1 million or more in assets or accounts enrolled in a Vanguard-affiliated advisory service); a $100 fee for the deposit of physical share certificates; a 20% fee on any class action settlement funds received; and a $250 processing fee "for research and removal of a restriction on a security held in your brokerage account."[8]

---

[6]     *Id.*
[7]     Vanguard, *About Us – Costs, fees & minimums,* available at https://investor.vanguard.com/client-benefits/investment-fees (last accessed November 7, 2024).
[8]     Market Watch, *Vanguard, the low-cost investing pioneer, will now charge $100 to close an account—unless you're a multimillionaire,* Vanessa Wong, last updated June 18, 2024, available at https://www.marketwatch.com/story/vanguard-the-low-cost-investing-pioneer-will-now-charge-100-to-close-an-account-unless-youre-a-multimillionaire-09ef461c (last accessed November 6, 2024); *see also* Vanguard, *Brokerage services commission & fee schedules,* as of

21.    Pertinent to this action is Vanguard's "$100 processing fee," dubbed as the "Account closure and full transfer out fee" (or "ACFTO Fee"), for each customer who closes their account and transfers their assets to another firm, and who do not hold at least $5 million in assets.

22.    Prior to July 1, 2024, Vanguard did not charge any ACFTO Fee, and consumers like Plaintiff had no reason to anticipate the addition of such a fee at the time they opened their account at Vanguard.

23.    Vanguard's current schedule of fees lists the ACFTO Fee as a "processing fee," but this is a deceptive. There is very little "processing" cost associated with closing an account. Instead, the fee is a profit center, designed to punish consumers for closing their account:

**Other services**

## Fees for other services

| Fee type | Amount |
| --- | --- |
| Account closure and full transfer out fee | Vanguard Brokerage may charge a $100 processing fee for each account closure and full transfer of account assets to another firm. Electronic Bank Transfers and ACH are not subject to this fee. The fee will not be assessed for clients who hold at least $5 million in qualifying Vanguard assets or brokerage accounts enrolled in a Vanguard-affiliated advisory service. |

*See id.*

B.    **Vanguard's ACFTO Fee Constitutes a "Junk Fee" Scorned by Federal Authorities and an Unlawful Penalty to Customers**

24.    In the last few years, federal agencies have taken aim at reducing, lowering, or eradicating "junk fees" like Vanguard's ACFTO Fee that have proliferated the American marketplace and resulted in exorbitant costs for consumers.

_____

July 1, 2024, available at https://investor.vanguard.com/client-benefits/brokerage-fees-commissions (last accessed November 6, 2024).

25. The Biden-Harris Administration has defined "junk fees" as "hidden, surprise fees that companies sneak onto customer bills, increasing costs and stifling competition in industries across the economy."[9] The Federal Trade Commission ("FTC") has similarly described these fees as "unfair or deceptive fees that are charged for goods or services that have little or no added value to the consumer[.]"[10]

26. Classic examples of "junk fees" include "surprise fees" that consumers discover after purchase, such as out-of-network hospital bills or airline charges; mandatory fees imposed at the back-end of the buying process, such as "service fees" in connection with ticketed concerts or sports events; and "exploitative fees" like bank overdraft fees that "far exceed the marginal cost of the service they purport to cover."[11]

27. Agencies like the FTC, Consumer Financial Protection Bureau. Department of Transportation, Federal Communications Commission, and Department of Housing and Urban Development alike have been tasked with cracking down on these junk fees.[12]

---

[9] The White House, *Biden-Harris Administration Announces Broad New Actions to Protect Consumers From Billions in Junk Fees,* Briefing Room, Statements and Releases (October 11, 2023), available at https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/11/biden-harris-administration-announces-broad-new-actions-to-protect-consumers-from-billions-in-junk-fees/#:~:text=Today%2C%20the%20Biden%2DHarris%20Administration,the%20full%20price%20up%20front (last accessed November 8, 2024).

[10] The White House, *The President's Initiative on Junk Fees and Related Pricing Practices,* Briefing Room, Blog (October 26, 2022), available at https://www.whitehouse.gov/briefing-room/blog/2022/10/26/the-presidents-initiative-on-junk-fees-and-related-pricing-practices/ (last accessed November 8, 2024).

[11] *Id.*

[12] *See* The White House, *Biden-Harris Administration Announces Broad New Actions to Protect Consumers From Billions in Junk Fees,* Briefing Room, Statements and Releases (October 11, 2023), available at https://www.whitehouse.gov/briefing-room/statements-releases/2023/10/11/biden-harris-administration-announces-broad-new-actions-to-protect-consumers-from-billions-in-junk-fees/#:~:text=Today%2C%20the%20Biden%2DHarris%20Administration,the%20full%20price%20up%20front (last accessed November 8, 2024).

28.    For example, in July 29, 2022, the FTC took action against First American Payment Systems who, like Vanguard, charged its business merchant customers surprise $495 cancellation fees when those businesses tried to cancel their services.[13] "First American lured small businesses in with false promises of low costs and an easy exit, and hit them with surprise fees and illegal charges when they tried to get out."[14] First American was ordered to refund $4.9 million to those small businesses and to cease collecting early termination fees.[15]

29.    Vanguard's enactment of the ACFTO Fee presents similar concerns, but even more so given that the harm is disproportionately affecting only low-to-middle class consumers while expressly exempting multimillionaires.

30.    In a Market Watch article, Senator Elizabeth Warren called Vanguard's ACFTO Fee "outrageous":

> Sen. Elizabeth Warren, a Massachusetts Democrat, compared Vanguard's new account-closure fee to 'having to pay $100 to leave Six Flags once you're in the gates. If your service is so bad that you have to charge people to keep them from leaving, you need to re-examine your business model.' She told MarketWatch that Vanguard's move "shows why the CFPB's fight against junk fees is critical. It's outrageous to charge people $100 to close their bank account.'[16]

31.    Adding insult to injury, Vanguard's ACFTO Fee operates as an unenforceable penalty designed to punish consumers who elect to terminate their relationship with Vanguard.

---

[13]    Federal Trade Commission, *FTC Takes Action to Stop Payment Processor First American from Trapping Small Businesses with Surprise Exit Fees and Zombie Charges* (July 29, 2022), available at https://www.ftc.gov/news-events/news/press-releases/2022/07/ftc-takes-action-stop-payment-processor-first-american-trapping-small-businesses-surprise-exit-fees (last accessed November 8, 2024).

[14]    *Id.*

[15]    *Id.*

[16]    Market Watch, *Vanguard, the low-cost investing pioneer, will now charge $100 to close an account—unless you're a multimillionaire,* Vanessa Wong, last updated June 18, 2024, available at https://www.marketwatch.com/story/vanguard-the-low-cost-investing-pioneer-will-now-charge-100-to-close-an-account-unless-youre-a-multimillionaire-09ef461c (last accessed November 6, 2024).

32.     When asked about the newly imposed ACFTO Fee, a spokesperson for Vanguard explained that "[f]or clients seeking to transfer their entire account(s) to another brokerage firm, the processing fee helps to offset the costs of the asset transfer and aligns the cost to those clients making the change."[17]

33.     But the amount of Vanguard's ACFTO Fee is not based upon a bona fide reasonable estimate of damages, if any, that Vanguard may suffer as a result of a customer closing their account and transferring their funds out of these accounts, particularly where it is a flat $100 fee for *every* customer who has assets under $5 million—regardless of whether that customer has $1,000 in assets or $1,000,000.

34.     In this respect, Vanguard's ACFTO Fee does not serve the purpose of reasonably measuring any anticipated harm arising from a customer's account closure or fund transfer, but rather, is utilized purely to penalize the average consumer who is *not* a multimillionaire.

35.     What's worse, because the fee is new, consumers had no way to anticipate the fee at the time they opened their account at Vanguard and had no way to avoid the fee once it had been added. This is a classic "unfair" business practice.

**C.    Plaintiff's Experience**

36.     Plaintiff has maintained a brokerage account with Vanguard during all relevant times alleged herein.

37.     At the time Plaintiff opened his brokerage account, there was no fee for closing the account.

38.     On or around December 2024, Plaintiff closed his Vanguard brokerage account and transferred all of his assets out of that account and into another firm.

---

[17]    *Id.*

9

39. On December 10, 2024 Vanguard charged Plaintiff a $100 ACFTO Fee as a result of closing his account.

40. Plaintiff would not have initially signed up for a Vanguard account had he known he would later be forced to pay the ACFTO Fee in order to close his account and transfer his funds out of that account.

41. Plaintiff suffered injury in fact and has lost money as result of the unlawful conduct alleged herein.

### D. Consumers Nationwide Have Shared Uniform Distaste for Vanguard's ACFTO Fee

42. The following online consumer complaints illustrate how Vanguard customers have voiced concern over Vanguard's ACFTO Fee and are upset by Defendant's new "anti-consumer" fee practices:

> I was a big fan of [Vanguard founder Jack] Bogle and his philosophy around making a financial firm that was more centered on normal people, and less about trying to extract as many fees as possible. This seems like a step away from that, and that's part of why I was disconcerted. . . It doesn't seem like their heart's in the right place, and they're trying to find ways to drum up revenue. . . I think Vanguard dragged the industry the right way, and now the industry seems to be dragging them the wrong way.[18]

> After investing with Vanguard for 20+ years, I'm submitting a request to transfer out my last account at Vanguard to Fidelity before Vanguard starts imposing a $100 transfer-out fee. I get the subtle message that Vanguard doesn't want me unless I have $5 million there.[19]

> It's not that $100 is going to bankrupt any of us, it's a sign that they are losing their mission focus, it's anti-customer.[20]

---

[18]    Market Watch, *Vanguard, the low-cost investing pioneer, will now charge $100 to close an account—unless you're a multimillionaire,* Vanessa Wong, last updated June 18, 2024, available at https://www.marketwatch.com/story/vanguard-the-low-cost-investing-pioneer-will-now-charge-100-to-close-an-account-unless-youre-a-multimillionaire-09ef461c (last accessed November 6, 2024).

[19]    *Id.*

[20]    *Id.*

It shouldn't cost you (or me) money to exercise our choice not to do business with them."[21]

It's a money grab. They are hoping you don't notice. Checking my account now, but I'm not eating these fees. Another thought – for smaller accounts, I think it's a message of "go away, we don't make enough money off of you."[22]

It does appear a bit anti-consumer…especially those with smaller accounts…[the] account transfer and closing fees are very high. I have seen HSA providers try and create a walled garden by adding account termination fees…but not brokerage accounts.[23]

It had always been some comfortable dealing with Vanguard – I do not think I will be comfortable with what's coming.[24]

Reading my brokerage services agreement update for Vanguard this morning I saw this . . This seems pretty predatory to me, and I have been frustrated with a number of policies vanguard has adopted lately, so I may try to exit my accounts in advance of the change.[25]

This is honestly such bullsh*t. What other services are allowed to charge you fees for cancelling? I generally like Vanguard but have always thought this "exit fee" crap was a greedy cash grab.[26]

I think it should be illegal to impose changes like this to existing accounts. I don't see any real different between this and just shoplifting a $100 item. If you agreed to it at the time of creating the account, fine. But taking your money first and then later saying "we're gonna keep $100 of that," nope.[27]

It's not that $100 is going to bankrupt any of us, it's a sign that they are losing their mission focus, it's anti-customer. I don't want to do business with a company that does this to their customers, because if they are willing to start doing things like this, what else are they going to do in the future?[28]

---

[21]    *Id.*

[22]    Clark.com, *One of Clark's favorites goes bad? Vanguard,* available at https://community.clark.com/t/one-of-clarks-favorites-goes-bad-vanguard/5076 (last accessed November 6, 2024).

[23]    *Id.*

[24]    *Id.*

[25]    Reddit, *Vanguard to charge $100 Exit Fee,* available at https://www.reddit.com/r/financialindependence/comments/1chplo1/vanguard_to_charge_100_exit_fee/?rdt=63575 (last accessed November 6, 2024).

[26]    *Id.*

[27]    *Id.*

[28]    *Id.*

It's just that it's one of a number of signals showing that Vanguard appears to be losing its pro-customer focus. For a long time, fees were monotonically decreasing, now it seems like they're looking for various ways to get more out of their customers . . . This is a business where trust is a prime consideration, . . . and Vanguard has long been considered one of, if not the most trustworthy large brokerage firm. Moves like this ding trust.[29]

## CLASS ALLEGATIONS

43.    Plaintiff brings this action on behalf of himself and all others similarly situated

pursuant to Rule 23, *et. seq* of the Federal Rules of Civil Procedure. The proposed Nationwide

Class and Washington Class (collectively referred to herein as "Class") is defined as:

> <u>Nationwide Class</u>: All Vanguard brokerage account holders who, within the applicable statute of limitations up until class certification, paid an Account Closure and Full Transfer Out ("ACFTO") Fee to Vanguard.

> <u>Washington Class</u>: All Vanguard brokerage account holders in Washington who, within the applicable statute of limitations up until class certification, paid an Account Closure and Full Transfer Out ("ACFTO") Fee to Vanguard.

44.    Excluded from the Class is Defendant, Defendant's subsidiaries and affiliates, their

officers, directors and members of their immediate families and any entity in which Defendant has

a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded

party, the judicial officer(s) to whom this action is assigned, and the members of their immediate

families.

45.    Plaintiff reserves the right to modify or amend the definition of the proposed Class

and/or to add a subclass(es), if necessary, before this Court determines whether certification is

appropriate.

46.    This action is brought and may be properly maintained on behalf of each of the

Class members pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

(i)    [29]    *Id.*

47.     *Numerosity of the Class*: The parties are so numerous that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Vanguard's records. Vanguard has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

48.     Defendant has a database, or other documentation, of its customers' account transactions, enrollment, and closure documents. These databases or documents can be analyzed to ascertain which of Defendant's customers have been harmed by its practices and thus, qualify as Class members. Further, the Class definitions identify unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to Class members through notice published in newspapers or other publications.

49.     *Commonality*: The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual Class members because Vanguard has acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

> a.     Whether Vanguard charged its customers an ACFTO Fee when those customers closed their Vanguard brokerage accounts and transferred their funds out of those accounts;

> b.     Whether the conduct enumerated above violates the implied covenant of good faith and fair dealing;

13

c.    Whether the conduct enumerated above constitutes an unfair trade practice within the meaning of Washington's State Consumer Protection Act;

d.    Whether Vanguard's ACFTO Fee constitutes an unenforceable and unlawful penalty under New York law;

e.    Whether Vanguard has been unjustly enriched by its collection of ACFTO Fees;

f.    Whether Plaintiff and Class members have been damaged by Vanguard's misconduct alleged herein; and

g.    The appropriate measure of damages.

50.    *Typicality*: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Vanguard, as described herein. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and Class members are substantially the same because the relevant agreements between Defendant and its customers were identical as to all relevant terms, and also because the challenged practices are uniform for Plaintiff and Class members. Accordingly, in pursuing his own self-interest in litigating the claims, Plaintiff will also serve the interests of the Class.

51.    A class action provides a fair and efficient method for adjudication of this controversy. Specifically,

a.    Trying these actions separately would create a risk of inconsistent and incomplete adjudications with respect to individual members of the Class;

b.    No litigation has been commenced by or against members of the Class involving the same issues;

c.    Common questions of law and fact predominate over any questions affecting individual members;

d.    Chester County is an appropriate forum for the litigation of the claims of the entire Class;

14

e.     The Class is numerous enough to render joinder of all members or the maintenance of separate suits impracticable, and the difficulties likely to be encountered in the management of this action as a class action are minimal; and

f.     Defendant has refused to act on grounds generally applicable to the Class.

52.     *Adequacy*: Plaintiff is a more than adequate representative of the Class in that Plaintiff was an account holder at Vanguard and has suffered damages as a result of Vanguard's misconduct. In addition:

a.     Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of account holders against Vanguard;

b.     There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c.     Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d.     Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

53.     *Predominance and Superiority*: The matter is properly maintained as a class action because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication,

15

economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact.

54.    Plaintiff knows of no difficulty to be encountered in the management or maintenance of this action that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

55.    Vanguard has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

56.    All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
**(Individually and on Behalf of the Nationwide Class and Washington Class)**

57.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

58.    Plaintiff, and all members of the proposed Class, contracted in writing with Vanguard for investment services.

59.    New York law implies a covenant of good faith and fair dealing in all contracts providing that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to

16

their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

60.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

61.     Vanguard breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein. Specifically, Vanguard should not have used its discretion to modify its contract after formation by adding a fee that essentially constitutes a new, unexpected penalty for terminating the contract.

62.     Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

63.     Plaintiff and all members of the proposed Class have sustained damages as a result of Vanguard's breach of the implied covenant of good faith and fair dealing arising from the contract with its customers.

<u>**VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW (the "GBL")**</u>
**N.Y. GBL § 349, *et seq.***
**(Individually and on Behalf of the Nationwide Class)**

64.     Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

65.     Vanguard's brokerage agreement includes a choice of law provision specifying that New York law applies to all accounts.

17

66.     New York's GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349.

67.     Vanguard engaged in deceptive acts or practices in the conduct of its business, trade or commerce, or in the furnishing of its services in New York by deceptively luring consumers into a contract for brokerage services with the promises of no fees for cancelling the contract and then later unilaterally adding on a $100 cancellation fee. As such, Vanguard's enactment of its ACFTO Fee is a deceptive bait and switch scheme.

68.     The aforementioned acts and practices are consumer-oriented, unlawful, and prohibited by New York's GBL § 349.

69.     There were reasonably available alternatives to further Vanguard's legitimate business interests, other than engaging in the misleading and deceptive conduct described herein.

70.     Vanguard's conduct and actions are deceptive and misleading to reasonable consumers and will continue to mislead consumers in the future.

71.     Plaintiff relied on Vanguard's representations in deciding to enter into a brokerage account agreement with Vanguard and funding his account.

72.     As a direct and proximate result of Vanguard's misconduct, Plaintiff and the Class members have suffered and will continue to suffer actual damages.

73.     Vanguard's wrongful conduct is ongoing and presents a continuing threat to Class members.

74.     Pursuant to NY GBL § 349, Plaintiff seeks damages, attorneys' fees, and an injunction enjoining Vanguard from continuing to engage in the unfair business practices described above.

### VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

**Wash. Rev. Code Ann. § 19.86, *et seq.*
(Individually and on Behalf of the Washington Class)**

75.     Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

76.     Plaintiff pleads this claim in the alternative, if New York consumer protection law does not apply to the nationwide class.

77.     Washington's Consumer Protection Act makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" RCW § 19.86.020

78.     Plaintiff and members of the Class are "persons" as defined in RCW 19.86.010(1).

79.     Defendant is a "person" as defined in RCW 19.86.010(1).

80.     Vanguard engages in unfair and deceptive business practices relating to the imposition of ACFTO Fees on its customers when they close and transfer funds out of their accounts, in violation of the Washington Consumer Protection Act, Wash. Rev. Code. Ann. § 19.86, *et seq.* In particular, the wrongful conduct described herein violated § 19.86.020.

81.     Plaintiff and Class members justifiably relied on Vanguard's promise of low fees when choosing to open and fund their investment accounts with Vanguard.

82.     As a direct and proximate result of Vanguard's alleged misconduct, Plaintiff and Class members suffered an ascertainable loss in the form of financial harm through Vanguard's imposition of ACFTO Fees when they closed their Vanguard accounts.

83.     Plaintiff and Class members would not have invested with Vanguard had they known that Vanguard would materially modify the contract to impose ACFTO Fees when they choose to terminate their contract with Vanguard.

84. Vanguard's conduct is also unfair. Adding a new ACFTO Fee to open accounts—thereby unavoidably penalizing consumers for switching brokerages—is unfair.

85. As redress for Vanguard's repeated and ongoing violations of this consumer protection statute, Plaintiff seeks all damages available under CPA § 19.86.090, including actual damages, costs (including reasonable attorneys' fees), treble damages, and injunctive relief.

## UNJUST ENRICHMENT
### (Individually and on Behalf of the Nationwide Class and Washington Class)

86. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

87. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

88. Plaintiff and the Class involuntarily conferred a benefit on Defendant when they spent money in the form of ACFTO Fees in order to close their Vanguard accounts and transfer their assets out of their Vanguard accounts.

89. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

90. These unfair and fraudulent acts allowed Defendant to unlawfully receive monies that would not have been obtained but for Defendant's acts in enacting ACFTO Fees for every Vanguard brokerage account holder who chooses to close their account and transfer their funds out of a Vanguard account, when those customers do not have at least $5 million in assets.

91. Defendant lacks any legal justification for having engaged in a course of fraudulent conduct as alleged herein at Plaintiff's and Class members' expense.

92. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

93. Defendant's ACFTO Fee is an unlawful penalty under New York law because:

    a.    It does not serve the purpose of reasonably measuring the anticipated harm arising from closures and full transfers from a Vanguard account and thus, is punitive in nature;

    b.    It is not based upon a bona fide reasonable estimate of the damages, if any, that Defendant may suffer as a result of a customer closing their Vanguard accounts and transferring their funds out of those accounts, and is otherwise wholly disproportionate to the harm to Defendant, if any; and

    c.    The actual damage, if any, Defendant suffers when a customer withdrawals their money and closes their Vanguard accounts is not difficult to ascertain and is well below that which they charge.

94. Unlawful penalties, such as the ACFTO Fee imposed by Defendant, violate public policy and are void and unenforceable.

95. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained ACFTO Fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

    A.    Certification for this matter to proceed as a class action on behalf of the Class pursuant to Federal Rule of Civil Procedure 23;

    B.    Appointing Plaintiff as representative of the Class, and appointing counsel for Plaintiff as Class Counsel for the Class;

    C.    Finding Vanguard's practices to breach the implied covenant of good faith and fair dealing inherent in its contract with its customers;

    D.    Enjoining Defendant from the wrongful conduct described herein;

E.      Restitution and disgorgement of all ACFTO Fees paid to Vanguard by Plaintiff and the members of the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

F.      Actual and/or compensatory damages and treble damages in amounts according to proof;

G.      Awarding pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

H.      Awarding reasonable attorneys' fees and costs under the common fund doctrine, the WSCPA, and all other applicable law; and

I.      Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demands trial by jury on all issues in this Class Action Complaint that are so triable.

Dated:  March 4, 2025

                                    By: *Kenneth J. Grunfeld*
                                    PA I.D. No. 84121
                                    **KOPELOWITZ OSTROW P.A.**
                                    65 Overhill Road
                                    Bala Cynwyd, PA 19004
                                    Telephone: (954) 332-4200
                                    grunfeld@kolawyers.com


                                    **KALIELGOLD PLLC**
                                    Jeffrey D. Kaliel (*pro hac vice* to be filed)
                                    1100 15th Street NW, 4th Floor
                                    Washington, D.C. 20005
                                    Telephone: (202) 350-4783
                                    jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia Goren Gold (*pro hac vice* to be filed)
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

*Attorneys for Plaintiffs and the Proposed
Class*

23