## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN ERROL QUINN, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | **CIVIL NO. 25-1153** |
| | : | |
| THE VANGUARD MARKETING CO., | : | |
| *Defendant.* | : | |

**Scott, J.**                                                    **February 3, 2026**

## MEMORANDUM

Plaintiff Sean Errol Quinn ("Plaintiff") on behalf of himself and all others similarly situated brings this Class Action Complaint against Defendant Vanguard Marketing Corporation ("Defendant" or "Vanguard") based on Defendant's decision to implement a $100 Account Closure Full Transfer Out Fee ("ACFTO Fee") on brokerage accounts when accountholders choose to transfer their funds invested at Vanguard to another investment firm. Plaintiff alleges (1) breach of implied covenant of good faith and fair dealing; (2) violation of New York's General Business Law ("GBL"); (3) violation of the Washington Consumer Protection Act ("WCPA"); and (4) unjust enrichment.

For reasons given below, the Court grants Defendant's Motion to Dismiss Plaintiff's Complaint.

## I.    Background

### A.  Procedural History

On June 20, 2025, Defendant filed a Motion to Dismiss Plaintiff's Amended Class Action Complaint.  ECF No. 21.  Plaintiff filed an Opposition to Defendant's Motion on July 11, 2025. ECF No. 22.  Defendant filed its Reply Memorandum on July 31, 2025.  ECF No. 23.  The Court held oral argument on November 6, 2025.

### B.  The Brokerage Agreement

Vanguard's Brokerage Account Agreement (the "Agreement"), ECF No. 10-2, governs the relationship between the Parties.  The Agreement's choice of law provision provides that New York Law applies to Plaintiff's common law claims.  ECF No. 10-2 § 9a.  The Agreement permits Vanguard to "modify or rescind existing provisions or add new provisions to the Agreement." ECF No. 10-2 § 9e.  Additionally, the Agreement provides that Vanguard "reserves the right to change or waive commissions and fees at its discretion."  ECF No. 10-2 § 7b.[1]

Under the section of the Agreement titled "Delivery of Required Information, Other Documents, and Notices About Your Account," Vanguard outlines that it will "direct communications to the . . . email address . . . We have . . . in Our files" and that "[a]ny communication (required or otherwise) that [Vanguard] directs to such . . . email address . . . will be considered delivered to You, whether or not the communication is actually received."  ECF No. 10-2 § 6l.  The accountholder is "responsible for paying any service or other fees imposed" on its account as "detailed in the [Vanguard] commission and fee schedules, which are incorporated by reference into this Agreement."  ECF No. 10-2 § 7b.

---

[1] The Agreement was amended in September 2024.  *See* ECF No. 10-4.  The changes to the Agreement are immaterial to the Court's analysis.

C. *Vanguard's New Fee*

On July 1, 2024, Vanguard amended the Agreement to add the $100 ACFTO Fee. ECF No. 19 ¶ 19. The ACFTO Fee is a processing fee charged to brokerage accountholders who (i) close their accounts and transfer their assets to another firm, and (ii) hold less than $5 million in the soon-to-be-closed account. ECF No. 10-5 at 8. Investment funds are moved electronically between investment firms on a system called the Automated Customer Account Transfer Service ("ACATS Transfers"). ECF No. 19 ¶ 31.

On May 1, 2024—two months prior to the implementation of the ACFTO Fee—Vanguard emailed Plaintiff a "Notice of updated commission and fee schedules and account agreement for Vanguard Brokerage Services," in which Vanguard stated that "[w]e want to make you aware that we have updated the Vanguard Brokerage Account Agreement and associated commission and fee schedules." ECF No. 10-6 at 2.

In December 2024, Plaintiff closed his Vanguard account and transferred his investments to another firm. ECF No. 19 ¶ 59. On December 10, 2024, Plaintiff incurred the $100 ACFTO Fee in accordance with the Agreement. ECF No. 19 ¶ 60. Plaintiff contends that the fee implementation is deceptive and unfair, especially considering Vanguard's representation that it is a "leader in low-cost investing." ECF No. 19 ¶ 15. Plaintiff further contends he would not have opened an account with Vanguard had he known about the later implementation of the ACFTO Fee. ECF No. 19 ¶ 61.

## II.    Legal Standard

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility means 'more than a sheer possibility that a defendant has acted unlawfully.'" *Tatis v. Allied*

*Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).

In addition to the complaint's factual allegations, the Court may consider "documents appended to the complaint or incorporated in the complaint by reference, facts that can be judicially noticed, and documents 'integral to the complaint.'" *Abernethy v. EmblemHealth, Inc.*, 790 F.App'x 250 (2d Cir. 2019) (citation modified); *see also M&M Stone Co. v. Pennsylvania*, 388 Fed. Appx. 156, 162 (3d. Cir. 2010). Under New York law, courts treat contract interpretation as a question of law appropriately resolved at the motion to dismiss stage. *See Williston v. Eggleston*, 379 F.Supp.2d 561, 567 (S.D.N.Y. 2005).

This Court employs a three-step process to evaluate a 12(b)(6) motion to dismiss. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First the Court articulates the elements of the claim. *Id.* Second, the Court reviews the complaint while disregarding formulaic recitations of the elements of a claim and any threadbare, conclusory allegations. *Id.* at 327-28. Third, the Court evaluates the plausibility of the remaining allegations while assuming the truth of the well-pleaded allegations, construing them in the light most favorable to plaintiff, and drawing all reasonable inferences in plaintiff's favor. *Id.* at 328.

### III.     Discussion

#### A.  *Plaintiff Does Not State an Implied Covenant of Good Faith and Fair Dealing Claim.*

In New York, the implied covenant of good faith and fair dealing is incorporated into every contract.  *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014). This covenant provides that neither party shall do anything that has the effect of depriving the other party of the anticipated benefits of their agreement.  *Id.*  New York law is clear, however, that "the implied covenant of good faith cannot create duties that negate explicit rights under the contract."  *Id.* (quoting *LJL 33rd St. Assocs. v. Pitcairn Props. Inc.*, 725 F.3d 184, 195 (2d Cir. 2013)).  Additionally, the covenant is not implicated merely because a party acts "in a way that may incidentally lessen the other party's anticipated fruits of the contract."  *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 93 (2d Cir. 2013).  "Where the contract contemplates the exercise of discretion, [the implied covenant] includes a promise not to act arbitrarily or irrationally in exercising that discretion."  *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

Plaintiff alleges that Vanguard breached the implied covenant of good faith and fair dealing and abused its discretion by: 1) modifying its contract after formation to add a fee that constitutes a new, unexpected penalty for terminating the contract; 2) stating that it "may" charge an ACTFO Fee in certain cases but charging it in all circumstances, and 3) defining "Electronic Bank Transfer" to exclude ACATS Transfers despite ACATS Transfers being "electronic" and between "banks." ECF No. 19 ¶ 81.

Here, the Brokerage Agreement's explicit contract language provides that Vanguard "reserves the right to change or waive commissions and fees at its discretion."  ECF No. 10-2 § 7b. This explicit language controls, and there cannot be an implied promise that negates Vanguard's right to add the ACFTO Fee as permitted by the Agreement.  For the same reason, Vanguard did

not abuse its discretion by adding the ACFTO Fee because the Agreement expressly granted Vanguard that authority.

Plaintiff argues Vanguard abused its discretion when it did not "change" a preexisting fee but instead added an entirely new fee that was unanticipated at the time of contracting. ECF No. 22 at 12. On Plaintiff's view, "change" does not mean "add," so adding a fee is not a contractually sanctioned method of changing commissions and fees. ECF No. 22 at 13. This Court is not persuaded by Plaintiff's semantic distinction. The cases on which Plaintiff relies are inapposite: each arises in the arbitration context, where courts apply policy considerations unique to the Federal Arbitration Act—not general contract-interpretation principles at issue here.[2] Fees cannot be considered "unanticipated" when they were expressly contemplated in the original agreement, as indicated by the incorporated fee schedule. ECF No. 10-3. That the fee incidentally lessened Plaintiff's expected benefits does not, on its own, establish a violation of the implied covenant of good faith and fair dealing—especially where explicit rights control.

Next, the use of the word "may" signals that Vanguard retains discretion on when it will assess the ACFTO Fee. The Agreement further specifies when Vanguard may exercise that discretion, namely when accountholders exceed $5 million in assets. ECF No. 10-5 at 8. Although Plaintiff is dissatisfied that Vanguard does not exercise its discretion to his benefit, that dissatisfaction does not render the discretion illusory.

Finally, ACATS Transfers—transfers of in-kind holdings to another brokerage firm—are not between banks and as such, are not Electronic Bank Transfers as defined by the Agreement. *See* ECF No. 10-2 § 5. ACATS Transfers concern the movement of account assets, not necessarily

---

[2] In fact, one of the cases Plaintiff invoked at oral argument expressly held that a similarly worded change-in-terms provision permitted changes to fees but not to arbitration provisions, in relevant part, because the original agreement contemplated a change in fees. *See Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189, 195 (E.D.N.Y. 2004).

money.  A reasonable consumer need not intuit this distinction because the ACFTO Fee's definition—which appears in the fee schedule and is incorporated by reference into the Agreement—explicitly says "Electronic Bank Transfers . . . are not subject to this fee." *See* ECF No. 10-5 at 8.

Plaintiff's allegations concerning the alleged violation of the implied covenant of good faith and fair dealing conflict with the express language of the controlling Agreement, which, again, this Court interprets as a matter of law.  Accordingly, Plaintiff's first claim does not pass the plausibility threshold and will accordingly be dismissed without prejudice.

### B. *Plaintiff Does Not State a Deception Claim Under New York General Business Law.*

New York's General Business Law § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GBL § 349.  A GBL claim requires that the deception occur "in New York." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 (2002).  "[T]he existence of a New York choice-of-law provision, standing alone" is an "insufficient transactional nexus" to confer standing for purposes of a GBL claim. *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 110 (E.D.N.Y. 2020).  As such, Plaintiff—a Washington resident—lacks statutory standing to invoke the GBL.  Even if there were standing, there are also fatal problems to the substance of Plaintiff's allegations.

Plaintiff alleges Vanguard engaged in deceptive acts when enacting the ACFTO Fee because Vanguard promised "rock bottom fees" and marketed itself as "a leader in low-cost investing." ECF No. 19 ¶¶ 2, 15.  These representations are inactionable puffery and are insufficient to anchor Plaintiff's GBL claim. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 60 (2d Cir. 2022) ("[P]uffery involves 'exaggerated, blustering, and boasting statement[s]' that are *objective*—and therefore technically provable—but 'upon which no

reasonable buyer would be justified in relying.'" (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 160 (2d Cir. 2007)).  Further, Vanguard's statements about low-cost investing do not reasonably extend to situations where Vanguard imposes processing fees (as opposed to investment-related costs and fees).  Nor can such representations be construed as a promise to forego such fees.  As already explained, the implementation of the ACFTO Fee was both contractually authorized in the Agreement and clearly communicated to Plaintiff.  A disclosure that aligns with the Parties' Agreement cannot, as a matter of law, be deemed deceptive.

C.  *Plaintiff Does Not State an Unfairness Claim Under the Washington Consumer Protection Act.*

Washington's Consumer Protection Act makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." RCW § 19.86.020.  To prevail in a private WCPA claim, Plaintiff must not only establish an unfair or deceptive act occurring in trade or commerce but must also demonstrate, among other things, injury and causation.  *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986).  In addition to deception, the WCPA has a distinct "unfairness" element.  Under Washington law, an unfair act requires in part that the consumer could not have reasonably avoided the putative injury, and such an injury is avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it."  *See Greenberg v. Amazon.com, Inc.*, 3 Wash. 3d 434, 458–61 (2024) (en banc) (citation modified).

With respect to the deception prong, Plaintiff's WCPA claim fails for the same substantive reason as his GBL claim: the statements are inactionable puffery.  Here, Plaintiff argues that Vanguard engaged in deceptive practices when it advertised that it offered "low-cost investing." This statement is too general and too unreliable to form the basis of a WCPA deception claim.  *See*

*Babb v. Regal Marine Industries, Inc.*, 2014 WL 690154, at *3 (Wash. Ct. App. 2014) (holding that puffery cannot give rise to a deceptive act).

With respect to the unfairness prong, Plaintiff's WCPA claim fails because the alleged harm was entirely avoidable. On May 1, 2024, notice went out via email to Plaintiff's email address associated with his Vanguard account that the ACFTO Fee would be implemented on July 1, 2024. ECF No. 10-6 at 3. Plaintiff plainly had reason to anticipate the Fee and was provided two months' notice before its implementation, during which he could have closed the account and left Vanguard without being subject to the ACFTO Fee. Because Plaintiff has failed to plead facts sufficient to establish an unfair or deceptive act, the Court declines to reach the issues of injury or causation.

### D. Plaintiff Does Not State an Unjust Enrichment Claim.

"[T]he existence of a valid and enforceable contract precludes recovery on a theory of unjust enrichment." *Cornhusker Farms, Inc. v. Hunts Point Co-op. Mkt, Inc.*, 769 N.Y.S.2d 228, 233 (2003). Plaintiff does not challenge the existence or validity of the contract but rather claims that Vanguard exceeds its authority under the contract, which is a *de facto* admission that there exists a valid and enforceable contract. *See, e.g.*, ECF No. 29 at 26:6–15. Because this dispute is fundamentally contractual, the unjust enrichment claim is precluded.

### IV.    Conclusion

For the reasons stated above, the Court grants Defendant's motion to dismiss without prejudice. An appropriate Order will be entered separately.